John Jung, Appellee, v. Norman Siegal et al., Defendants, London Guarantee & Accident Co., Ltd., Appellant.

## Gen. No. 42,007.

Heard in the second division of this court for the first district at the October term, 1941. Opinion filed March 24, 1942.

JOHN E. WILSON, of Chicago, for appellant.

PEDEN, MELANIPHY, RYAN & ANDREAS, of Chicago, for appellee; JOHN C. MELANIPHY and GERALD RYAN, both of Chicago, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

A garnishment action based upon a tort judgment entered against Norman Siegal, defendant, in favor

of John Jung, plaintiff, for $186.66 and costs. The garnishment action was tried by the court without a jury and the issues were found against the garnishee, London Guarantee & Accident Co., Limited, a corporation, and damages were assessed at $197.75. The garnishee defendant appeals from a judgment entered upon the finding.

The statement of claim alleges the facts in relation to the tort judgment; alleges that an execution was returned, "No property found," and asks that summons issue against defendant garnishee and that the latter be required to answer in writing, under oath, certain interrogatories attached to the statement of claim. It is only necessary to refer to the fifth, as that interrogatory and defendant garnishee's answer to the same present the issue in the case. Interrogatory 5 reads as follows:

"Interrogatory 5. Has said corporation garnishee defendant now in its possession any property, goods, chattels, rights, credits or effects of any kind belonging to said defendant Norman Siegal or in which said defendant is interested, and if so, describe the same fully and particularly, giving amounts, items and values thereof. Especially, did you, the corporation garnishee defendant, issue to defendant Norman Siegal, on I-12-40, your National Standard Automobile Liability Policy, No. K. D. 201934, covering 1939 Mercury coupe sedan, auto-motor No. 99A67289, which auto was involved in the collision on Jan. 28, 1940 with plaintiff's auto, out of which the judgment arose, and in which Policy you insured N. S. against property damage liability to extent of $5,000.00."

Defendant garnishee first answered the interrogatory as follows: "Issued, but never effective." Upon motion of plaintiff the said answer was stricken upon the ground of insufficiency. The garnishee defendant then filed the following answer:

"Answer: Policy was issued, but never effective, due to the fact that it was cancelled as of the date of issue, because of false warranties made to obtain the Policy, which would not have been issued if the false warranties had not been made; and for failure to pay the premium required under the terms and conditions of the Policy."

Defendant garnishee contends: "I. Plaintiff in a garnishment proceeding has no greater rights against the garnishee defendant than are possessed by the original defendant. Plaintiff . . . can recover only such benefits as the insured might recover in an action upon a contract or policy of public liability insurance. II. The court erred in finding that the policy was in force and effect, and in failing to find that the policy was void *ab initio*. A. Where a policy is issued as result of false statements, the policy is void *ab initio*, and the defendant and his judgment creditor are bound by the terms and conditions of the policy. B. Where the policy is issued in consideration of the premium and the statement in the policy, the policy does not become effective until the premiums are paid."

On January 12, 1940, defendant garnishee issued its automobile policy to Norman Siegal, defendant in the original action, for public liability and property damage, for one year. On January 28, 1940, defendant's car, covered by the policy, was involved in a collision with a car belonging to John Jung, plaintiff, and as a result of the collision the latter recovered a judgment against defendant, on April 7, 1941, for $186.66. An execution was returned on April 28, 1941, "No property found." On March 14, 1940, forty-six days after the accident, garnishee defendant mailed to defendant Siegal the following letter:

"March 14, 1940

"Registered Mail
"Mr. Norman Siegal,

"Moto Scoot Manufacturing Co.

"7723 Essex Avenue

"Chicago, Illinois

"Dear Mr. Siegal:

"Relative to London Guarantee & Accident Co. policy KD-201934 issued for you effective as of January 12th, 1940 to expire January 12th, 1941, we find that there is a breach of warranty in the statements thereof and we therefore consider that the policy has been of no effect and has been null and void from its effective date.

"We also observe that the premium thereon has not been paid.

"Very truly yours,

"London Guarantee & Accident Co. Ltd.

"Conkling, Price and Webb,

"General Agents.

"By

"INZ:hb"

Garnishee defendant designates this letter "as a written notice of the cancellation of the policy." It will be noted that the letter does not specify what statements constituted "a breach of warranty," nor does defendant garnishee's answer to Interrogatory 5 state what "false warranties" were made to obtain the policy. It was during the trial that the defendant garnishee first disclosed the ground upon which it based a right to cancel the policy . Strictly speaking, defendant Siegal made no representations nor warranties. A representation is a statement *proffered by insured* as a basis for the contract. A warranty consists of a statement *by insured* upon the literal truth of which the validity of the contract depends. A misrepresentation is a false representation of a material fact *by one of the parties* to the other tending directly to induce the other to enter into the contract. Siegal made no written representations nor warranties. Indeed, the record does not show that he made any oral

representations or warranties. Defendant garnishee contends that defendant Siegal warranted that he had no automobile policy cancelled within one year; that this warranty was proven false upon the trial and voids the policy *ab initio*. Defendant garnishee introduced evidence tending to show that another insurance company wrote, for defendant Siegal, a policy on the same automobile that is covered by the instant policy; that the said policy was issued for a period of one year from August 9, 1939, and was cancelled on December 21, 1939, for nonpayment of premium. Defendant Siegal testified that so far as he knew he never had any policy on the said automobile cancelled. Attached to the instant policy is a statement made by the general agents of defendant garnishee to the latter. This statement contains "Declarations," Item 7 of which reads as follows: "Item 7. No insurer has canceled any automobile insurance issued to the named insured, nor declined to issue such insurance, during the past year, except as herein stated: No Exceptions." The insurance policy contains many "Agreements," "Exclusions" and "Conditions." One of the "Conditions" reads as follows: "9. Declarations. By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance." Defendant garnishee contends that by reason of this "Condition" defendant Siegal was bound by the "declarations" made by the general agent to its company the same as if he had made the "declarations" himself. In support of this contention defendant garnishee cites such cases as *McMahon v. Continental Assur. Co.*, 308 Ill. App. 27, 34; *Hancock v. National Council Knights & Ladies of Security*, 303 Ill. 66, 71. In each of these cases the

representations were made by the insured. No case is cited that applies to the instant situation. Defendant Siegal had no possible chance to ascertain what "declarations" had been made by the general agent to its company until the policy was delivered to him, but defendant garnishee contends that it was his duty to examine all of the "Agreements," "Exclusions" and "Conditions" in the policy and that such an examination would have apprised him that by accepting the policy he agreed that the "declarations" made by the general agent were his agreements and representations. It will be noted that "Condition" 9 does not inform the insured that "the statements in the declarations" refer to "declarations" made by the general agent to its company. A lawyer, but not a layman, would suspect that "Condition" 9 referred to the so-called "declarations" made by the general agent. But even if it be assumed that defendant Siegal was bound by the "declarations" made by the general agent to its company, before defendant garnishee could declare the policy void because of an alleged "breach of warranty in the statements thereof," it should clearly appear that the defendant, in adopting the "declarations" made in Item 7, was guilty of a material misrepresentation. If defendant garnishee intended to fairly apprise defendant Siegal of the importance of the answer made by the general agent to Item 7, plain language should have been used in making the answer. The language used was not the language that a layman would use. It would be an inequitable rule that would allow defendant garnishee to void the instant policy upon an alleged misrepresentation so worded. In this connection it must be borne in mind that the letter of March 14, 1940, was written forty-six days after the accident in question, that formed the basis of the judgment in the original case. The premium on the policy had not been paid, although defendant Siegal had been in possession of the policy

since January 12, 1940, and it is difficult to escape the conclusion that defendant garnishee was seeking a way to escape payment under the policy. When defendant garnishee wrote the letter of March 14, 1940, and when it made the answer to Interrogatory 5, it had not yet determined upon its exact defense, and it did not disclose that defense until the trial of the cause.

Defendant garnishee contends that the policy did not become effective until the premium was paid and that the evidence shows that the premium was not paid. Plaintiff contends that under the evidence the trial court was justified in finding that the garnishee defendant extended credit to defendant Siegal as to the payment of the premium and therefore the policy became effective when it was delivered to Siegal. We agree with this contention. The letter of March 14, 1940, does not state that the policy was null and void from its effective date because the premium had not been paid. The letter concludes with the following observation: ''We also observe that the premium thereon has not been paid,'' which language is entirely consistent with plaintiff's theory of fact that defendant garnishee extended credit to Siegal. The evidence shows that Siegal had possession of the policy from January 12, and defendant garnishee did not attempt to void it until forty-six days after plaintiff's cause of action arose.

We have given careful consideration to the facts and circumstances in this case and have reached the conclusion that the judgment of the municipal court of Chicago should be affirmed, and it is accordingly so ordered.

*Judgment affirmed.*

SULLIVAN and FRIEND, JJ., concur.