MARY B. GARDE, a Minor, by her Guardian, Virginia Garde, *et al.*, Plaintiffs-Appellants, v. COUNTRY LIFE INSURANCE COMPANY, Defendant-Appellee.

Fourth District   No. 4—85—0786

Opinion filed September 19, 1986.

Verticchio & Verticchio, of Gillespie, for appellants.

Rammelkamp, Bradney, Hall, Dahman & Kuster, of Jacksonville (Forrest G. Keaton, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Decedent, Joseph Garde, applied for life insurance with defendant, Country Life Insurance Company (Country), was issued a binding receipt, and died while his policy application was pending. Plaintiffs, the beneficiaries, filed suit to compel payment of the proceeds. Country alleged decedent made material misrepresentations concerning his health and the existence of other insurance which voided any coverage under the binding receipt. The circuit court granted Country's motion for summary judgment and dismissed the cause. Plaintiffs appeal. We affirm.

The salient facts are undisputed. In late January 1983, decedent met with James L. Bettis. Bettis, in an affidavit, stated that they initially completed an application for life insurance for a face amount of $100,000 with $100,000 accidental-death benefits. Bettis accurately recorded decedent's answers to the application questions which Bettis read to decedent. After completing the application through question 23, decedent decided to apply dividends from another policy with Country to the first premium on the new policy. Subsequently, Bettis prepared the necessary letter, and on February 1, 1983, at his office, decedent completed and signed the application. Bettis then gave him a receipt.

Decedent answered no to the following application questions:

"12b. Had any electro cardiogram for chest pain or other physical complaint ***?

\* \* \*

17. Have you ever been treated for or ever had any known indication of *** d. chest pain, irregular or rapid heart rate, high blood pressure, rheumatic fever or other severe infection, heart murmur, heart attack or other disorder of the heart or blood vessels?

\* \* \*

20. OTHER THAN ABOVE, have you within the past 5 years \*\*\* (c) Had electrocardiogram, X ray, or other diagnostic test?"

Question 8 of the application stated:

"What is the amount of insurance now in force on Proposed Insured's life?"

Question 10 of the application stated:

"Has the Proposed Insured any applications for other life or health insurance or a request for reinstatement now pending?"

Decedent responded that he had a $10,000 ordinary life policy with Country and that he did not have any pending applications for insurance. The application also stated:

"IT IS UNDERSTOOD AND AGREED THAT:

(a) If binding receipt has been given and is in effect, its terms will apply. Otherwise, no insurance will take effect before the policy for such insurance is delivered and the first premium paid. Upon such delivery and payment, insurance will take effect if the answers and statements in this application are then true without material change."

The receipt stated:

"Subject to the terms and conditions of this receipt as printed on this and the reverse side hereof, life insurance and any additional benefits in the amount applied for shall be deemed to take effect as of the date of the application for benefits due as a result of accidental or natural causes originating after the date of the application to the same extent as if the policy applied for had been issued and delivered.

\* \* \*

*Any insurance coverage which could otherwise be provided shall be void if the application contains any material misrepresentation.*" (Emphasis added.)

On August 5, 1985, Country filed a motion for summary judgment with attached affidavits and decedent's medical records. The affidavits revealed that decedent had the following life insurance when he applied for the instant life insurance policy:

| AFFIANT | COMPANY | ISSUE/APPLI-CATION DATE | FACE AMOUNT | ACCIDENTAL DEATH BENEFITS |
|---|---|---|---|---|
| Wesley D. Oglesby | Country Life Insurance Co. | 12/11/61 | $ 10,000.00 | $ 10,000.00 |
| Rebecca Wingate | United Benefit Life | 11/9/73 | $ 10,000.00 | $ 10,000.00 |

| | | | | |
|---|---|---|---|---|
| | United of Omaha | 5/20/82 | $ 25,000.00 | $ 25,000.00 |
| | United of Omaha | 11/20/82 | $100,000.00 | |
| | United of Omaha | 1/18/83 | $ 50,000.00 | |
| Pauline Watson | Equitable Life Assurance | 1/9/75 | $ 54,000.00 | |
| | Equitable Life Assurance | 12/22/82 | $125,000.00 | |
| Eugene M. Gelfand | Inter-Ocean Insurance Co. | 3/13/81 | $ 25,100.00 | |
| Gerald Philpott | State Farm Insurance | 11/19/82 Application Date-Issued on 2/3/83 | $100,000.00 | |
| W. Edward Summer | Illinois Mutual Life & Casualty | 12/10/82 | $300,000.00 | |
| Karen Diane Meyers | Ohio Life Insurance Co. | 1/6/83 Pending on 2/1/83 | $100,000.00 | $200,000.00 |
| Charles Jenrich | American Mid-States Life Ins. | 1/13/83 | $ 19,600.00 | |
| Linda Greenberg | Omaha Financial Life Insurance | 1/13/83 | $ 4,250.00 | |
| | Omaha Financial Life Insurance | 1/17/83 | $ 4,961.82 | |
| | Omaha Financial Life Insurance | 1/1783 | $ 10,500.00 | |
| Roger Juenger | Massachusetts Indemnity & Life | 1/13/83 | $ 10,000.00 | |
| Bert Hutchison | American Family Life Insurance | 1/13/83 Pending on 2/1/83 | $100,000.00 | $100,000.00 |
| Ronnie Fry | Pekin Life Insurance | 1/17/83 | $ 40,000.00 | |
| Philip B. Willette | Truman National Life Insurance | 1/17/83 | $ 15,000.00 | |
| Mary Logan | World Service Life Insurance | 1/17/83 | $ 15,000.00 | |
| David T. Hansen | Time Insurance Company | 1/24/83 | $100,000.00 | |
| James T. Armstrong | Allstate Life Insurance | 8/16/82 | $200,000.00 | |

Bettis, in his affidavit, stated that the agent's manual directs

agents to refuse to issue binding receipts when an applicant has been previously hospitalized for chest pain or answers question 17(d) or 12(b) in the affirmative. Decedent's medical records revealed that on October 31, 1977, decedent was admitted to the hospital complaining of angina pain and severe pain in his left chest with nausea. The medical report noted the pain in the left chest was accompanied by episodes of tachycardia, an abnormally rapid heartbeat. On October 31, 1977, an electrocardiogram was performed. The results were normal. Decedent was released from the hospital the next day with a diagnosis of cause unknown for the episode.

Harvey Crain, Jr., Country's associate director of underwriting, stated in his affidavit that decedent's application for insurance was pending on February 25, 1983. A policy had not yet issued. If question 12(b) on the application had been answered yes, any coverage under the binding receipt would have been voided and a medical investigation done without a binding receipt in effect. If questions 8 or 10 on the application concerning other applied-for or in-effect insurance policies had been answered correctly, an analysis of whether to issue a policy would have been done. The determination about whether to issue the policy would have been based upon decedent's net worth, indebtedness, and financial ability to pay premiums. In any event, no accidental-death benefit would have been included because company policy precludes issuance of accidental-death benefits when such benefits are in effect in the amount that decedent already carried. Crain stated that based upon the other insurance in effect, Country would have rejected the application for insurance.

On October 17, 1985, the court found that no genuine issue of material fact existed, so allowed the motion for summary judgment. It concluded as a matter of law that reasonable minds could not differ as to the materiality of the misrepresentations on health and other insurance.

Plaintiffs initially argue that the trial judge in his memorandum of decision conceded that issues of fact existed as to the materiality of the misrepresentations by saying that reasonable men could not differ about the materiality of the statements. Therefore, plaintiffs argue the decision is erroneous. The trial judge stated:

> "As counsel pointed out, the substantial question raised is whether the misrepresentations by decedent in his application for insurance were 'material' misrepresentations; that is, whether it can be said as a matter of law that they are material and that, had the insured known the truth of those matters it would not have issued the binding receipt or a subsequent policy

of insurance. *The Court has concluded that reasonable persons could not differ in that regard."* (Emphasis added.)

■ Summary judgment is appropriate only when the pleadings, depositions, affidavits, and admissions on file present no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (*In re Estate of Whittington* (1985), 107 Ill. 2d 169, 483 N.E.2d 210, *cert. denied* (1986), 475 U.S. 1016, 89 L. Ed. 2d 313, 106 S. Ct. 1199; *Heman v. Jefferson* (1985), 136 Ill. App. 3d 745, 483 N.E.2d 537; Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) The purpose of a motion for summary judgment is not to try material issues of fact but to determine whether any exist. (*Sheetz v. Morgan* (1981), 98 Ill. App. 3d 794, 424 N.E.2d 867.) Even though a complaint and answer may purport to raise issues of fact, if the issues are not further supported by affidavits, depositions, or admissions, summary judgment is appropriate. (*Carruthers v. B. C. Christopher* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.) If the movant supplies facts which, if uncontradicted, would entitle him to judgment as a matter of law, the opponent cannot rely upon his complaint or answer to raise genuine issues of material fact. 57 Ill. 2d 376, 313 N.E.2d 357; *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 501, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.

■ Where, as in the instant case, the facts are not disputed, the court may draw inferences from them. If no fair-minded person could draw different inferences from those facts, there is no triable issue of fact and the motion for summary judgment should be granted. (*Roth v. Carlyle Real Estate Ltd. Partnership VII* (1984), 129 Ill. App. 3d 433, 437-38, 472 N.E.2d 836, 839; *Lower v. Lanark Mutual Fire Insurance Co.* (1983), 114 Ill. App. 3d 462, 466, 448 N.E.2d 940, 944.) However, summary judgment is a drastic remedy and should be awarded only if the right of the movant is clear and free from doubt. If reasonable persons could draw more than one conclusion or inference from the facts, including one unfavorable to the movant, the motion should be denied. *National Boulevard Bank v. Georgetown Life Insurance Co.* (1984), 129 Ill. App. 3d 73, 88, 472 N.E.2d 80, 90.

Here, the existence of the misrepresentations is not disputed. The trial judge's statement that reasonable persons could not differ on the materiality of the misrepresentation is a statement that only one reasonable inference can be drawn from the undisputed facts. The trial judge's statement was not a concession that the materiality of the misrepresentations was an issue of fact. Summary judgment may be appropriate where the materiality of a misrepresentation is in issue but its existence is not in issue. See generally *Hatch v. Woodmen Accident*

*& Life Co.* (1980), 88 Ill. App. 3d 409 N.E.2d 540.

Before addressing plaintiffs' contentions on the materiality of the misrepresentations, it is necessary to address this court's decision in *Hildebrand v. Franklin Life Insurance Co.* (1983), 118 Ill. App. 3d 861, 455 N.E.2d 553. In *Hildebrand,* the applicant was issued a conditional premium receipt which provided interim life insurance. He died while his application was on its way to the insurer's home office. The insurer's claims department initiated a special investigation and determined Hildebrand was not insurable because of his driving record. The court concluded that an insurer may not base its decision on noninsurability on information uncovered as the result of an extraordinary investigation. An affirmative defense of uninsurability requires that the insurer show that its decision is based upon objective criteria when the applicant dies while the application is pending. 118 Ill. App. 3d 861, 877, 455 N.E.2d 553, 565.

■ Plaintiffs maintain that *Hildebrand* controls the instant situation. Therefore, they argue that since Country failed to present evidence that it would have discovered and acted upon the misrepresentations absent decedent's death, summary judgment was improper. The instant situation does not involve the affirmative defense of noninsurability. Therefore, *Hildebrand* does not control. Additionally, we decline to extend the rationale of *Hildebrand* to the instant situation. *Hildebrand* involved an insurer basing its decision to deny coverage upon facts discovered as the result of an extraordinary investigation. Absent decedent's death, these factors might not have been discovered and would not have caused the denial of coverage. *Hildebrand* stressed that objective factors should be the basis of any decision which occurred when an applicant dies during the period when interim coverage is afforded.

Here, Country is not denying insurability, but asserting that decedent's misrepresentations were such that they vitiated any coverage in effect. Its underwriter and agent testified that the misrepresentations would void any coverage from the receipt or from a policy if a policy had issued. Decedent was on notice about the effect of the misrepresentation from both the application and the terms of the binding receipt. No element of unfair surprise to the applicant is involved. The rationale of *Hildebrand* need not be extended in the instant case.

■ Plaintiffs argue that decedent's statements about his medical history, although misrepresentations, were not material as a matter of law. In essence, plaintiffs maintain that the single episode of chest pain and resultant electrocardiogram were not of a serious nature, especially when one considers the entirety of decedent's medical history.

They argue that at least a fact question is created on this basis. We disagree and feel that an analogy to the Illinois Insurance Code's (Code) provisions (Ill. Rev. Stat. 1983, ch. 73, par. 613 *et seq.*) on the effect of misrepresentations is appropriate. Section 154 of the Code states in part:

> "No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." (Ill. Rev. Stat. 1983, ch. 73, par. 766.)

The section applies to policies of insurance. A binding receipt is in issue here rather than a policy of insurance. However, the binding receipt provides that its terms and conditions are the same as the pending policy's terms and conditions in the event of the insured's death. Therefore, interpretations and definitions of materiality as viewed in terms of an insurance policy are equally applicable to temporary insurance under a binding receipt.

▐▌ ▐ A misrepresentation in an application for insurance is a statement of something as a fact which is untrue and affects the risk undertaken by the insurer. (*Weinstein v. Metropolitan Life Insurance Co.* (1945), 389 Ill. 571, 577, 60 N.E.2d 207, 210; *Great West Steel Industries, Ltd. v. Northbrook Insurance Co.* (1985), 138 Ill. App. 3d 84, 484 N.E.2d 847.) Whether an applicant's statements are material is determined by the question of whether reasonably careful and intelligent men would have regarded the facts stated as substantially increasing the chances of the events insured against, so as to cause a rejection of the application or different conditions. (*Weinstein v. Metropolitan Life Insurance Co.* (1945), 389 Ill. 571, 60 N.E.2d 207.) The fact that a potential insured does not die from the misrepresented ailment does not affect the materiality of the misrepresentation. (389 Ill. 571, 60 N.E.2d 207; *Hatch v. Woodmen Accident & Life Co.* (1980), 88 Ill. App. 3d 36, 409 N.E.2d 540.) A good-faith mistake does not change the nature of the misrepresentation. (*Logan v. Allstate Life Insurance Co.* (1974), 19 Ill. App. 3d 656, 659, 312 N.E.2d 416, 420.) Incomplete answers or a failure to disclose material information in response to a question in an application may constitute a material misrepresentation. (*Hatch v. Woodmen Accident & Life Co.* (1980), 88 Ill. App. 3d 36, 409 N.E.2d 540.) This is because the misrepresentation prevents the insurer from adequately assessing the risk involved. *Weinstein v. Metropolitan Life Insurance Co.* (1945), 389 Ill. 571, 60 N.E.2d 207; *Hatch v. Woodmen Accident & Life Co.* (1980), 88 Ill. App. 3d 36, 409 N.E.2d 540.

An insurance applicant has the duty to act in good faith, and an insurer is entitled to truthful responses so that it may determine whether the applicant meets its underwriting criteria. Thus, the applicant must disclose all information and let the insurer determine the materiality of the ailment or information. (*Apolskis v. Concord Life Insurance Co.* (7th Cir. 1971), 445 F.2d 31, 35.) An insurer may rely upon the truthfulness of an applicant's answers. (*National Boulevard Bank v. Georgetown Life Insurance Co.* (1984), 129 Ill. App. 3d 73, 472 N.E.2d 80.) The materiality of a misrepresentation may be established by the underwriter's testimony or testimony of the insurer's employees. *Alperin v. National Home Life Assurance Co.* (1975), 32 Ill. App. 3d 261, 336 N.E.2d 365; *Moyer v. John Hancock Mutual Life Insurance Co.* (1955), 6 Ill. App. 2d 1, 126 N.E.2d 157.

■ Ordinarily, the materiality of a misrepresentation is a question of fact. (*Mooney v. Underwriters at Lloyd's, London* (1965), 33 Ill. 2d 566, 568, 213 N.E.2d 283, 285.) However, where the misrepresentation is of such a nature that all would agree that it is or is not material, the question is appropriate for summary judgment. *Hatch v. Woodmen Accident & Life Co.* (1980), 88 Ill. App. 3d 36, 409 N.E.2d 540; *La Penta v. Mutual Trust Life Insurance Co.* (1954), 4 Ill. App. 2d 60, 66, 123 N.E.2d 165, 168.

In *Hatch*, the appellate court affirmed the lower court's decision granting summary judgment to the insurer. The facts were not in dispute. The applicant stated that he was not suffering from any current illnesses and had been treated successfully for a sprained ankle. His physician's deposition revealed that prior to and after issuance of the policy, the applicant had been treated on 50 different occasions for problems resulting from a diseased liver. He had been hospitalized several times. The appellate court noted that the statements were clear misrepresentations and precluded the insurer from appraising the risk on the facts as they existed.

■ Similar factors apply in the instant case. Here, the decedent stated that he had not had any electrocardiograms for other than insurance purposes and had not been treated for chest pain or a rapid heart rate in answer to clear questions posed by the insurer. His medical record showed that he had been hospitalized five years before for chest pain with a rapid heart rate. He had undergone an electrocardiogram for diagnostic purposes. Even though his hospitalization was for only a short time and the test results were normal, Bettis and Crain stated that had this information been known, the instruction manual precluded a binding receipt for interim insurance. We note that this is not the type of episode which would readily be discounted by a patient.

A history of cardiac trouble would increase the risk insured against. Here, the medical misrepresentations would have caused other terms of insurance and perhaps a different rate schedule. As in *Hatch*, the statements were clear misrepresentations and precluded Country from appraising the risk on the facts as they existed. The trial court did not err in finding reasonable minds could not differ as to the materiality of the medical misrepresentations.

■ Plaintiffs argue that decedent's misrepresentations about his insurance coverage were not material as a matter of law because his other insurance did not increase the risk of the event insured against, decedent's death. They also argue that all reasonable men would not agree that the misrepresentations as to the other insurance were material. They base this argument in part upon unverified letters evidencing settlement of insurance claims on other policies. In ruling on a motion for summary judgment, the trial court should consider the pleadings, exhibits, affidavits, depositions, and admissions on file. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) The letters which plaintiffs rely on in the instant case were not in affidavit or deposition form and were attached to plaintiffs' argument in opposition to Country's motion for summary judgment. Issues of fact precluding summary judgment were not raised by these documents. *Floor v. Schaffhausen Corp.* (1964), 49 Ill. App. 2d 97, 199 N.E.2d 434.

An insurer has the right to inquire whether its applicants have insurance with it or any other company. Such information may be vital to the preliminary investigation of the proposed insured and may be considered material as a matter of law. (1A Appleman, Insurance Law & Practice sec. 222, at 65 (1981).) The significance of a misstatement about other insurance may be influenced by the amount of insurance which is not disclosed. This is particularly true when a provision of a later policy limits the extent of recovery where there is other insurance. 7 Couch on Insurance sec. 37:407, at 998 (2d ed. 1985).

Illinois courts have not yet addressed the issue of the effect of a misrepresentation about the existence of other insurance. However, other jurisdictions have found that a failure to reveal other insurance is a material misrepresentation which will void a policy. (*McDaniel v. Physicians Mutual Insurance Co.* (Tenn. 1981), 621 S.W.2d 391, 393.) Additionally, it should be noted that when the misrepresentation is of an egregious nature, courts often find that it is material. *Stone v. Those Certain Underwriters at Lloyd's, London, Subscribing to Cover Note No. Sl 10001* (1980), 81 Ill. App. 3d 333, 401 N.E.2d 622.

■ ■ In the instant case, decedent failed to report over a million dollars of pending and issued insurance. Crain's affidavit reveals

that Country would have initiated other investigatory procedures, assessed decedent's need for the policy with Country, not have offered decedent accidental-death benefits, and denied coverage. The existence of the other insurance, if known, would have affected the terms and conditions under which Country determined whether it would accept the risk involved. It was, therefore, a material misrepresentation. The trial court, under the circumstances presented here, did not err in finding reasonable minds could not differ about the materiality of the misrepresentation.

For the above reasons, we affirm the trial court.

Affirmed.

WEBBER and MORTHLAND, JJ., concur.