Kottmyer, J.
Plaintiff Chicago Bridge & Iron Company (“CBI") filed a motion in limine asking this Court to preclude defendants Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies (“London Insurers”) from introducing evidence that CBI made a misrepresentation in the course of CBI’s placement of insurance coverage with London Insurers. On November 13, 1998, this Court notified the parties that it would treat CBI’s motion as one for partial summary judgment on the defense of “nondisclosure,” and directed the submission of a statement of undisputed facts and any opposition in accordance with the terms of Superior Court Rule 9A(b)(5). Gamache v. Mayor of N. Adams, 17 Mass.App.Ct. 291, 295 (1984). For the reasons stated below, this Court now allows partial summary judgment in favor of CBI on the issue of nondisclosure.*
BACKGROUND
The undisputed facts, considered in the light most favorable to London Insurers as the nonmoving party, are as follows.
CBI seeks to recover losses resulting from claims asserted against it under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (“CERCLA”) and similar state laws, for the cleanup of four sites contaminated by the operations of a defunct wood treating concern, ALT, during the period 1937-47, with contamination allegedly continuing to the present. ALT’S operations at eighteen sites around the county caused seepage of contaminating chemicals into the ground which contributed to environmental damage to the properties.
The theoy advanced against CBI in the underlying litigation was that, as a minority shareholder of ALT during that period August 1934 through April 1954, CBI exercised sufficient control over ALT that CBI itself could be deemed an “operator” of the sites under § 107(a) (2) of CERCLA. ALT was independently operated and internally managed. In 1997, after more than a decade of litigation, the Third Circuit held that CBI was not liable as an operator. Aluminum Co. of America v. Beazer East, Inc., 124 F.3d 551 (3rd Cir. 1997). The trial court’s findings of fact were not disturbed on appeal. Aluminum Co. of America v. Beazer East, Inc., No. 91-0092 (W.D.Pa. June 27, 1996).
In April 1954, CBI sold its shares of ALT to Koppers Company, Inc. In June of 1954, Koppers (Beazer’s predecessor) and ALT executed a plan of liquidation *389 whereby ALT transferred all of its property and assets to Koppers and Koppers assumed all obligations and liabilities of ALT. London Insurers underwrote a series of umbrella liability policies issued to CBI for the period March 18, 1961 to February 1, 1970, with liability limits of $10-20 million. CBI had also purchased policies in the London Market during the period 1956-61. At the time of placement, CBI was asked by London Insurers to identify all subsidiary, associated affiliated companies or owned and controlled companies to be covered by the policy. None of the policies contains any endorsement or rider, or attached application, setting forth any representation or warranty by CBI concerning stock holdings or any other holdings of CBI divested before the 1956 initial placement. There is no evidence that London Insurers inquired about minority stock holdings of CBI.
A cable between two of CBI’s brokers in 1956 contained in the placing file maintained by London Insurers summarizing CBI’s business operations, holdings and liability claims history, and coverage does not identify stock holdings or any other holdings of CBI divested before 1956. Information (“INF”) sheets from 1956, 1961, 1963, and 1966, roughly corresponding with the dates at which CBI’s policies were issued and renewed, contained in the placing file maintained by London Insurers summarizing CBI’s business operations, holdings and liability claims history, and coverage does not identify stock holdings or any other holdings of CBI divested before 1956. London Insurers have produced no other evidence concerning CBI that was or may have been supplied to the London Insurers in connection with the placement of the policies. London Insurers’ expected witness Mr. Lowsley-Williams did not become an underwriter at Lloyd’s until 1965, has no recollection of being involved in the one renewal (1966) that took place after that date, and is not aware of any evidence that CBI made any false statement of fact in connection with the placement and renewal of its policies with London Insurers.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once a party moving for summary judgment has shown that there is no genuine issue of material fact, the burden is then upon the opposing party to respond and allege specific facts showing that there is a genuine triable issue. John B. Deary, Inc. v. Crane, 4 Mass.App.Ct. 719, 722 (1976). A party who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The court assumes that all of the facts set forth in the nonmoving party’s affidavits are true and that any inferences favorable to the nonmoving party should be drawn. Coveney v. President & Trustees of College of Holy Cross, 388 Mass. 16, 17 (1983).
CBI claims that London Insurers have proffered no evidence of any misrepresentation or false warranty by CBI. Further, CBI asserts that London Insurers cannot prove that any misrepresentation was material. Previously, this Court (White, J.) denied London Insurers’ motion for summary judgment on this issue, holding that London Insurers had not established that CBI was asked about its prior holdings, or that CBI had failed to disclose material information to London Insurers [8 Mass. L. Rptr. 471]. Further, the Court held that the insurance policies could not be voided without proof of intentional misrepresentation or concealment, citing St. Paul Ins. Co. v. Great Lakes Turnings, Ltd. 829 F.Sup. 982 (N.D. Ill. 1993).
NONDISCLOSURE
In insurance law, a “misrepresentation” is a “false representation of a material fact by one party to an insurance contract to the other party, tending directly to induce the other party to enter a contract of insurance.” Roberts v. Nat’l Liberty Group of Companies, 512 N.E.2d 792, 794 (Ill.App.Ct. 1994). The burden of proof is upon the insurer. Great West Steel Ind., Ltd. v. Northbrook Ins. Co., 484 N.E.2d 847, 852-53 (Ill.App.Ct. 1987). Under Illinois law, an insurer seeking to avoid coverage based on misrepresentation must demonstrate (1) that the insured in fact misrepresented information and (2) that the misrepresentation was made with actual intent to deceive or that the matter misrepresented was material and increased the insurer’s risk of loss. Methodist Medical Center of Illinois v. Am. Medical Sec. Inc., 38 F.3d 316, 319 (7th Cir. 1994). At the time the insurance contracts at issue in this case were in effect and at the time this action was filed, Illinois law provided that:
[no] misrepresentation or false warranty made by the insured ... in the negotiation of a policy for insurance . . . shall defeat or avoid the policy or prevent it attaching unless such misrepresentation [or] false warranty . . . shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.
*390 Ill. Rev. Stat. ch. 73, par. 76 (now 215 ILCS 5/154). See also Great West Steel Ind,, Ltd., 484 N.E.2d at 853.
Accordingly, under Illinois law, the initial foundation for an insurer’s “nondisclosure” defense is a misrepresentation or false warranty' — e.g., a false representation of fact or a failure to disclose, or misleading partial disclosure — in or attached to the policy. See Roberts, 512 N.E.2d at 794.
London Insurers do not allege a false representation by CBI, point to no evidence of any inquiry made by them or on their behalf which should have elicited information from CBI that was not disclosed, and point to no false or misleadingly incomplete statement by CBI. “Because [the] . . . alleged misrepresentations do not appear in any writing, Section 154 precludes the alleged misrepresentations . . . from being valid defenses.” A&A, Inc. v. Great Central Ins. Co., 630 N.E.2d 1002, 1009 (Ill. 1st Dist. 1994).
London Insurers argue that a misrepresentation in an application for insurance need not be “knowing” in order to void a contract, if it is instead material. Ratcliffe v. Int’l Surplus Lines Ins. Co., 550 N.E.2d 1052, 1057 (Ill. App. Ct. 1990); Methodist Medical Center of Illinois, 38 F.3d at 320; and Am. Nat’l Bank & Trust Co. of Chicago v. Certain Underwaters at Lloyd’s London, 444 F.2d 640, 647 (7th Cir. 1971). But the cases London Insurers cite in support of the proposition that failure to disclose material information on an application for insurance constitutes misrepresentation under Illinois law if the omission prevents the insurer from adequately assessing the risk involve failures to provide pertinent information in response to specific questions asked by insurers: Methodist Medical Center of Illinois, 38 F.3d at 320 (failure to disclose heart disorder); Unger v. Metropolitan Life Ins. Co., 242 N.E.2d 907, 910 (Ill. App. Ct. 1968) (failure to disclose cervical sprain); Ratliff v. Safeway Ins. Co., 628 N.E.2d 937, 942 (Ill. App. Ct. 1993) (failure to disclose driver in household). No case cited by London Insurers states or even implies that nondisclosure constitutes a defense in the absence of a pertinent inquiry.
Finally, none of the cases cited by London Insurers supports the proposition that insurers can avoid coverage simply by showing a fact was not disclosed which affected their ability to evaluate overall risk. “Before a court may determine if a misrepresentation was made with actual intent to deceive or was material, the court must find that a misrepresentation was made.” Methodist Medical Center, 36 F.3d at 319, citing Rivera v. Benefit Trust Lfe Ins. Co., 921 F.2d 692, 695-96 (7th Cir. 1991). In cases in which coverage has been avoided, a misrepresentation has been established. Johnson-Maday v. Prudential Ins. Co., 657 N.E.2d 1114, 1115 (Ill. 1st Dist. 1995) (insurer asked for medical history; lengthy hospitalization record omitted); Garde v. Country Life Ins. Co., 498 N.E.2d 302, 306-07 (Ill. 4th Dist 1986) (misrepresentation conceded; insurance application denied chest pains); Hatch v. Woodmen Acc. & Life Co., 409 N.E.2d 540, 541-42 (Ill.2d Dist. 1980) (insurer asked for medical histoiy; dozens of doctor visits omitted); Stone v. Certain Underwriters at Lloyd’s, London, 401 N.E.2d 622, 626 (Ill. 5th Dist. 1980) (claim of innocent omission of art price-valuation disparity “fraught with incredulity”).
MATERIALITY
London Insurers also have failed to adduce facts to support their allegation that if CBI made a misrepresentation, it was material.[1] The test for determining materiality is whether a reasonably careful and intelligent person would have regarded the facts stated as substantially increasing the chances of a happening of events insured against such that the insurer would have rejected the insurance application or attached different conditions. Mooney v. Underwriters at Lloyd’s, London, 204 N.E.2d 51, 54-55 (Ill. 1st Dist. 1964), rev’d on other grounds 213 N.E.2d 283 (Ill. 1966). The burden of proof is on the insurer to show that false statements materially affected its acceptance of risk and/or hazard assumed. Mooney, 204 N.E.2d at 54; Ledbetter v. Mammoth Life Acc. Ins. Co., 118 N.E.2d 640 (Ill. 1st Dist. 1954).
Materiality generally is a question of fact for the jury. Marshall v. Metropolitan Life Ins. Co., 90 N.E.2d 194, 198 (Ill. 1950); Weinstein v. Metropolitan Life Ins. Co., 60 N.E.2d 207, 210 (Ill. 1945). But summary judgment is appropriate if the materiality of a misrepresentation is not in doubt. Methodist Medical Center of Illinois, 38 F.3d at 320. Although it is unclear whether Illinois law looks to an objective prudent insurer or an individual insurer’s standards, R.A. Kosover, Misrepresentation in Applications for Insurance: A Survey of Illinois Law, 1979 So. Ill. U.L.J. 321, 332, it makes no difference in this case: the record is devoid of facts to support London Insurers’ claim that CBI’s failure to disclose its prior minority ownership of ALT shares was material. There is no evidence that the insurers inquired about past stock ownership. Further, as Judge White noted in ruling on London Insurers’ motion for summary judgment on this issue, CBI had sold all of its shares in ALT six years before the first policy period in 1954; Beazer’s predecessor assumed all of ALTs liabilities; CBI’s holdings in ALT never amounted to more than 5% of its assets; CERCLA was not enacted until 1980, years after the effective date of the first policy at issue in this action; and any liability of CBI under CERCLA would arise from its own actions as an operator.
ORDER
Defendants have no reasonable expectation of proving essential elements of the defense of nondisclosure. Accordingly, it is ORDERED that CBI’s motion in limine, treated as a motion for partial summary judgment on the defense of “nondisclosure,” is ALLOWED.

 Editor’s Note: For other opinions in this matter see 8 Mass. L. Rptr 471 and 9 Mass. L. Rptr. 391.

London Insurers does not allege that any misrepresentation by CBI was intentional.