**TIG INSURANCE COMPANY,
Plaintiff and Counter
Defendant,**

and

**Security Union Title Insurance
Company, Intervener,**

v.

**RELIABLE RESEARCH COMPANY,
INC., Defendant and Counter
Plaintiff.**

**No. 01–CV–0045–DRH.**

United States District Court,
S.D. Illinois.

Jan. 8, 2002.

Jeffrey A. Goldwater, Darcy L. Ibach, Bollinger, Ruberry, et al., Chicago, IL, for TIG Ins. Co.

Robert E. Jones, Jones, Korum, et al., St. Louis, MO, for Security Union Title Insurance Company.

Robert L. DeVoto, DeVoto, Paperner, et al., St. Louis, MO, for Reliable Research Company Incorporated.

## MEMORANDUM AND ORDER

HERNDON, District Judge.

### I. *Introduction*

TIG Insurance Company filed suit in this Court seeking rescission of contract and declaratory judgment.[1] Reliable Research Company filed a Counterclaim for declaratory judgment (Doc. 7). On August 30, 2001, Security Union Title Insurance Company, with leave of the Court, filed a complaint in intervention (Doc. 61). Before the Court is TIG Insurance's motion for summary judgment (Doc. 34).

### II. *Facts* [2]

On or about June 22, 1999, Reliable Research applied for Title and Escrow

---

**1.** TIG filed its original Complaint on January 18, 2001 (Doc. 1). TIG Insurance filed a First Amended Complaint on January 31, 2001 (Doc. 5) and a Second Amended Complaint on March 26, 2001 (Doc. 21).

**2.** These facts are taken from "TIG Insurance Company's Joint Statement of Undisputed

Facts (Doc. 36)". Although counsel for Reliable Research did not sign this joint statement of undisputed facts, he was granted an extension of time in which to respond to them but never filed such response. Further, Reliable Research has effectively admitted such facts in its briefing on the motion for summary judgment.

Professional Liability Insurance from TIG Insurance on a claims made basis for the period of September 1, 1999 to September 1, 2000. The application inquired as to whether the proposed insured had been the subject of any claims/suits in the previous ten years (Doc. 35, Exh. A).[3] In response to this inquiry, Reliable Research answered in the affirmative, but did not include the July 28, 1995 cause of action filed by LeChien in the Circuit Court of St. Clair County, Illinois seeking a permanent injunction against Reliable Research for the unauthorized practice of law. On or about August 26, 1999, Reliable Research submitted to TIG Insurance an additional completed Application for Title and Escrow Professional Liability Insurance effective September 1, 1999 to September 1, 2000. This application again asked whether the proposed insured had been the subject of any claims/suits in the previous ten years (Doc. 35, Exh. B). In response, Reliable Research answered in the affirmative, but again did not reference the cause of action filed by LeChien against Reliable Research. At no time following the date Reliable Research completed the applications or prior to the issuance of the TIG policy did any insured report the LeChien lawsuit.

TIG Insurance issued to Reliable Research Policy Number TAP37973248, effective September 1, 1999 to September 1, 2000 (Doc. 35, Exh. D). By its acceptance of the policy, Reliable Research agreed that the statements and representations made on the application were warranties and that the application is considered to be "incorporated into and constitutes a part of the policy" (Doc. 35, Exh. D). Reliable Research further agreed, by acceptance of the policy, that any concealment or misrepresentation of any material fact or circumstance would void the policy. (Doc. 35, Exh. D). The term "claim" is defined in the TIG Policy under Section E. The policy provides the following definitions:

2. **Claim** means:

 a. A demand in which damages are alleged; or

 b. An error, omission or negligent act that has happened that is likely to result in a claim being made against the Insured.

3. **Claim** includes:

 a. Cross claims, lawsuits, screening panel proceedings; or

 b. An arbitration proceeding in which damages are alleged and to which you must submit or do submit with our consent; or

 c. Any other alternative dispute resolution proceeding in which damages are alleged and to which you submit with our consent.

(Doc. 35, Exh. D). TIG Insurance subsequently issued a Renewal Policy to Reliable Research, effective September 1, 2000 to September 1, 2001 (Doc. 35, Exh. F). At no time following the date of the completion of the renewal application did Reliable Research report to TIG Insurance the existence of the LeChien suit. The renewal policy contains effectively the same definitions and terms of acceptance as the original policy.

The July 28, 1995 LeChien suit resulted in a permanent injunction prohibiting Reliable Research from engaging in the unauthorized practice of law (Doc. 35, Exh. G & H). On October 19, 2000, a complaint was filed by Ethel Hudgens and the Illinois

---

3. Question # 24 inquires:

"Have any claims/suits been made against the Applicant or any of its predecessors in business or any past or present owners, directors, officers, partners, solicitors, or employees in the last 10 years?

If yes, *ATTACH* completed Supplemental Claim form or give narrative report of each incident."

State Bar Association against Reliable Research for alleged violations of the Illinois Consumer Fraud and Deceptive Practices Act, the unauthorized practice of law, indirect criminal contempt, breach of contract, negligence, and breach of fiduciary duty (Doc. 35, Exh. J). On December 11, 2000, a complaint was filed by Mortgage One Corporation against, *inter alia,* Reliable Research for negligence and breach of contract (Doc. 35, Exh. K). Reliable sought defense and indemnity from TIG Insurance under the renewal policy for the Mortgage One suit and the Hudgens suit. On November 16, 2000, TIG Insurance reserved its rights to rescission of the policy based upon Reliable Research's misrepresentation in the policies for the Hudgens suit (Doc. 35, Exh. L). On January 4, 2001, TIG Insurance reserved all of its rights, provided a defense subject to the reservation of rights, and specifically reserved its rights to seek rescission of the policies issued to Reliable Research based upon the misrepresentation in the application for the Mortgage One suit.

### III. *Summary Judgment Standard*

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Oates v. Discovery Zone,* 116 F.3d 1161, 1165 (7th Cir.1997) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metropolitan Life Ins. Co.,* 123 F.3d 456, 461 (7th Cir.1997) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). The court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Regensburger v. China Adoption Consultants, Ltd.,* 138 F.3d 1201, 1205 (7th Cir.1998) (citing *Anderson v. Liberty Lob-*

*by, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In response to a motion for summary judgment, the non-movant may not simply rest upon the allegations in his pleadings. Rather, the non-moving party must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *Walker v. Shansky,* 28 F.3d 666, 670–71 (7th Cir. 1994), *aff'd,* 51 F.3d 276, 1995 WL 115867 (7th Cir.1995) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548). In reviewing a summary judgment motion, the court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.,* 877 F.Supp. 1114, 1124 (N.D.Ill.1995). The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to show a genuine issue of material fact." *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 933 (7th Cir.1997) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). Accord *Starzenski v. City of Elkhart,* 87 F.3d 872, 880 (7th Cir.1996), cert. denied, 519 U.S. 1055, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997); *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir.1994).

### IV. *Analysis*

TIG Insurance contends that it is entitled to summary judgment because Reliable Research's failure to report the Le-Chien lawsuit was clearly a material misrepresentation that entitles it to rescission of the insurance policies. Reliable Research argues that the omission

of the LeChien lawsuit was not a material misrepresentation because the phrase "claims/suits" in the application is ambiguous. Therefore, Reliable Research argues, it answered truthfully in response to what it believed the question to be asking.

### A. *Choice of Law*

 The insurance policy does not contain a choice-of-law provision. Reliable Research argues that the law of Missouri should govern this dispute, while TIG Insurance contends that Illinois law should apply. If there is a conflict between the laws potentially applicable to an action premised upon diversity of citizenship, federal district courts apply the choice-of-law principles of the forum state in determining which state's substantive law to apply. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir.2000). Under Illinois choice-of-law rules, when the parties did not designate a choice of law in their contract, "insurance policy provisions are generally 'governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.'" *Lapham–Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 166 Ill.2d 520, 526–27, 211 Ill.Dec. 459, 655 N.E.2d 842 (1995) (quoting *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill.2d 522, 322 N.E.2d 454 (1975)). The choice of law is made separately for each issue. *In re Air Crash Disaster Near Chicago, Illinois*, 644 F.2d 594, 611 n. 13 (7th Cir.1981). However, before the court engages in a choice-of-law analysis, it

should determine whether application of the relevant laws would produce different results. *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir.1994). "When there is no disagreement among the contact states, the law of the forum state applies." *Id.*

Reliable Research has not demonstrated that Missouri law differs from the law of Illinois applicable to this motion or otherwise demonstrated a conflict that would necessitate a choice of law. Reliable Research has not shown that Illinois or Missouri law would yield a different result on this motion regarding TIG Insurance's right to rescind the insurance policy. (*See* discussion of rescission, *infra*). Therefore, the Court need not conduct a choice-of law analysis at this juncture.

### B. *Insurer's Right to Rescind*

 Under both Illinois and Missouri law, misrepresentations in an application for an insurance policy may be cause for voiding the policy. *Methodist Med. Ctr. of Illinois v. Am. Med. Sec. Inc.*, 38 F.3d 316, 319 (7th Cir.1994); *American Standard Ins. Co. v. Forsythe*, 915 F.2d 1212, 1214 (8th Cir.1990). In Illinois, "an insurance company may deny coverage because of a misrepresentation in an application if the misrepresentation 'shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.'" *Methodist Med. Ctr.*, 38 F.3d at 319 (quoting 215 ILCS 5/154). Similarly, in Missouri, misrepresentations in an insurance policy are grounds for rescission if the statement(s) or omission(s) are false and material, even if "innocently made."[4] *Royal Am. Mgrs. v. Intern. Surplus Lines,*

---

4. Also under Missouri law, to prove a material misrepresentation, the insurer must demonstrate that the representation in the application was material and false when (1) the representation was warranted to be true, (2) the policy was conditioned upon its truth, (3) the policy provided that its falsity will avoid the policy or (4) the application was incorporated into and attached to the policy. *Central Bank of Lake of the Ozarks v. First Marine Ins. Co.*, 975 S.W.2d 222, 225 (Mo.App.1998). All of these circumstances exist in this case.

760 F.Supp. 788, 792 (W.D.Mo.1991). Therefore, if the insured made a material misrepresentation or a misrepresentation was made with the intent to deceive on the application for insurance, the policy is void *ab initio.* *Home Ins. Co. v. Dunn,* 963 F.2d 1023, 102̇6 (7th Cir.1992).

### 1. *Misrepresentation*

■■■ A misrepresentation in an application for insurance is "a statement of something as a fact which is untrue and affects the risk undertaken by the insurer." *Ratcliffe v. International Surplus Lines Ins. Co.,* 194 Ill.App.3d 18, 25, 141 Ill.Dec. 6, 550 N.E.2d 1052 (1st Dist.1990); *see also Farley v. St. Charles Ins. Agency, Inc.,* 807 S.W.2d 168, 170 (Mo.App.1991). "Incomplete answers or a failure to disclose material information on an application for insurance may constitute a misrepresentation when the omission prevents the insurer from adequately assessing the risk involved." *Methodist Med. Ctr.,* 38 F.3d at 320; *see also Farley,* 807 S.W.2d at 170. The misrepresentation on the application through which the insurer seeks rescission need not be related to the claim for which the insured eventually seeks coverage. *Mooney v. Underwriters at Lloyd's London,* 54 Ill.App.2d 237, 245, 204 N.E.2d 51 (1st Dist.1964), *rev'd on other grounds,* 33 Ill.2d 566, 213 N.E.2d 283 (1965); *Miller v. Plains Ins. Co.,* 409 S.W.2d 770, 774 (Mo.App.1966).

Reliable Research argues that its failure to disclose the LeChien lawsuit was not a misrepresentation because the phrase "claims/suits" as contained in the insurance application is ambiguous because it was not defined. Reliable Research also argues that "claims/suits" *could* mean only those actions in which money damages are sought, and Reliable Research was therefore truthful in its response to the insurer's inquiry since the LeChien lawsuit only sought an injunction.

■■■ The term "claims/suits" is defined in the TIG policy, but not in the insurance application. This, however, does not lead to the conclusion that the term is ambiguous. "A policy term is not ambiguous because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning." *Lapham–Hickey Steel Corp.,* 166 Ill.2d 520, 529, 211 Ill.Dec. 459, 655 N.E.2d 842 (1995); *Farm Bureau Town & Country Ins. of Missouri v. Hilderbrand,* 926 S.W.2d 944, 947 (Mo.App.1996). Further, "a court cannot read an ambiguity into a policy just to find in favor of the insured. A policy provision is ambiguous only if it is subject to more than one reasonable interpretation." *Id.* If, however, a provision is unambiguous, the court must use its plain, ordinary and popular meaning. *Id.*

The Court finds that the phrase "claims/suits" is clear and unambiguous.[5] In fact, the terms "claim" and "suit" are two of the most common terms in the law. Black's Law Dictionary defines "claim" as: "to demand as one's own or as one's right; to assert; to urge; to insist. Cause of ac-

---

5. Reliable Research argues that the Court should apply the doctrine of "reasonable expectations," which requires a court to define a policy term according to what a reasonable person in the position of the insured would have understood the term to mean. *Greer v. Zurich Ins. Co.,* 441 S.W.2d 15, 27 (Mo.1969). Illinois has rejected the reasonable expectations doctrine. *Bain v. Benefit Trust Life Ins. Co.,* 123 Ill.App.3d 1025, 79 Ill.Dec. 528, 463

N.E.2d 1082 (5th Dist.1984), and Missouri only applies the reasonable expectations doctrine in cases where the policy is ambiguous and the intent of the parties cannot be determined. *Farm Bureau Town & Country Ins. v. Hilderbrand,* 926 S.W.2d 944, 947 (Mo.App. 1996). Because the Court finds that the term "claims/suits" is unambiguous, the doctrine of reasonable expectations would not be applied even under Missouri law.

tion." BLACK'S LAW DICTIONARY 247 (6th ed.1991). Moreover, "suit" is defined as:

A generic term, of comprehensive signification, referring to any proceeding by one person or persons against another or others in a court of justice in which the plaintiff pursues, in such court, the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or in equity.

BLACK'S LAW DICTIONARY 1434 (6th ed.1991). Reliable Research was required to disclose any "claims/suits" made against it in the preceding ten years. Under the common, ordinary and popular meaning of these terms, the 1995 action for a permanent injunction filed by LeChien was a "claim/suit" instituted against Reliable Research in the preceding ten years and therefore should have been disclosed. The Court finds that Reliable Research made a misrepresentation on its insurance application that, if material, may entitle TIG Insurance to rescind the insurance policies.

### 2. *Materiality of the Misrepresentation*

■■■ Under both Illinois and Missouri law, a misrepresentation is material if "reasonably careful and intelligent persons would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application." *Methodist Med. Ctr.,* 38 F.3d at 320 (quoting *Small v. Prudential Life Ins. Co.,* 246 Ill.App.3d 893, 186 Ill.Dec. 841, 617 N.E.2d 80 (1993)); *American Standard,* 915 F.2d at 1214 (material if the answer, if truthful, might reasonably influence an insurer to reject a risk or charge a higher premium). Materiality may be established by the testimony of the insurer's underwriter or its employees. *Methodist Med. Ctr.,* 38 F.3d at 320. Ordinarily, the materiality of a misrepresentation is a question of fact. *Mooney v. Underwriters at Lloyd's Lon-*

*don,* 33 Ill.2d 566, 213 N.E.2d 283 (1965); *Golden Rule Ins. Co. v. Schwartz,* 323 Ill.App.3d 86, 97, 256 Ill.Dec. 70, 751 N.E.2d 123 (1st Dist.2001). However, where the misrepresentation is of such a nature that all would agree that it is or is not material, the question is appropriate for summary judgment. *Garde v. Country Life Ins. Co.,* 147 Ill.App.3d 1023, 1032, 101 Ill.Dec. 120, 498 N.E.2d 302 (4th Dist. 1986).

■■■ In this case, all would agree that the existence of the LeChien lawsuit against Reliable Research is a fact that a reasonably careful and intelligent person would believe to substantially increase the chances of the event insured against. As a result of the LeChien lawsuit, Reliable Research had been permanently enjoined from the unauthorized practice of law. TIG Insurance's underwriter has testified that had she known about the LeChien suit against Reliable Research, she would not have issued the insurance policy (Doc. 35, Exh. C, p. 3). Further, a court order permanently enjoining a title company from the unauthorized practice of law would be a "red flag" to any reasonably careful and intelligent underwriter of Title and Escrow Professional Liability Insurance. A standing injunction against the unauthorized practice of law by the insured most assuredly increases the hazard assumed by a title and escrow insurer. In fact, one of the suits for which Reliable Research seeks coverage was instituted at least in part as a result of Reliable Research's alleged violation of the injunction. Accordingly, the Court finds that Reliable Research's failure to disclose the existence of the LeChien lawsuit was a material misrepresentation that entitles TIG Insurance to rescission of the policies and therefore grants TIG Insurance's motion for summary judgment.

### C. *Return of Premiums*

Citing *Morgan Publications, Inc. v. Squire Publishers, Inc.*, 26 S.W.3d 164, 171 (Mo.App.2000), Reliable Research argues that TIG Insurance is not entitled to rescind the policies because TIG has not returned the premiums paid by Reliable Research. Neither Illinois nor Missouri law requires return of the consideration for the contract as a condition precedent to bringing suit. *Ehlert v. Ward*, 588 S.W.2d 500, 503 (Mo.1979) ("when the purpose of the action ... is cancellation it is not a condition precedent to the party's right to maintain the action that he tender into court the consideration he has received ...."). The purpose of rescission, however, is to return the parties to the status quo. *Morgan*, 26 S.W.3d at 175; *Puskar v. Hughes*, 179 Ill.App.3d 522, 529, 127 Ill.Dec. 880, 533 N.E.2d 962 (2nd Dist. 1989). The court may, therefore, condition the grant of rescission on the insurer's compliance with the court's order to tender to the insured the premiums paid. *Ehlert*, 588 S.W.2d at 504. Accordingly, the Court ORDERS TIG Insurance to return to Reliable Research all premiums paid for the insurance policy numbered "TAP37973248" and the insurance policy numbered "TAP37974252."

### V. *Conclusion*

The Court **GRANTS** TIG Insurance's motion for summary judgment (Doc. 34) and rescinds the TIG Policy and Renewal policy issued to Reliable Research. The Court **DECLARES** that the Hudgens Complaint and the Mortgage One Complaint are not covered under the TIG policies. Further, the Court **ORDERS** TIG Insurance to return to Reliable Research all premiums paid for the insurance policy numbered "TAP37973248" and the insurance policy numbered "TAP37974252." The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of TIG Insurance and against Reliable Research

Company. The Court **DENIES as moot** the remaining pending motions in this case (Docs. 46 & 68). Remaining in this case is Security Union Title Insurance's Complaint against Reliable Research.

**IT IS SO ORDERED.**